UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
------------------------------------------------------ x
                                        :
DEBORAH S. LODATO,                      :        NO. 3:21 CV 1424(RMS)
     Plaintiff,                         :
                                        :
V.                                      :
                                        :
LOUIS DEJOY, et al.,                    :
     Defendants.                        :
                                        :        DATE: January 19, 2024
                                        :
------------------------------------------------------ x
```

<u>RULING AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

The plaintiff Deborah Lodato has brought this action alleging that the defendants Postmaster Louis DeJoy, former Monroe Postmaster Oscar Munoz, and Monroe Post Office Supervisor David Carrasquillo discriminated against her on the basis of her age and sex. Specifically, the plaintiff contends that she was terminated from her position as a City Carrier Assistant ("CCA") at the Post Office in Waterbury, Connecticut in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623 *et seq.* ("ADEA"); and 29 C.F.R. § 1604.1 *et seq*. The plaintiff further states a claim for intentional infliction of emotional distress.

The defendants seek summary judgment with respect to both counts of discrimination, contending that the plaintiff is unable to establish circumstances giving rise to an inference of discrimination based on either sex or age, and that there was a legitimate, nondiscriminatory reason for the plaintiff's termination. The defendants also assert that, as it relates to the  claim for intentional infliction of emotional distress, the plaintiff appears to maintain that the emotional distress arose from the defendants' violation of her rights under Title VII. As such, the defendants

argue that the claim fails both on the merits and because she has not exhausted the requisite administrative remedies. The defendants also point out that, should the Court construe the intentional infliction distress claim as a standalone tort, the Federal Tort Claims act would apply, and the claim would likewise fail due to a failure to exhaust administrative remedies.

For the reasons set forth below, the defendants' motion for summary judgment is **GRANTED.**

## I.     FACTUAL BACKGROUND

The following facts, which are taken from the defendants' Local Rule 56 (a)(1) Statement of Material Facts (Doc. No. 28-2), the plaintiff's Statement of Material Facts (Doc. No. 31), and the record, are undisputed unless otherwise indicated.

On December 24, 2016, the plaintiff, born in 1961, began work as a City Carrier Assistant ("CCA") for the United States Postal Service ("USPS") at the Post Office in Waterbury, Connecticut. (Doc. No. 28-2 at 1; Doc. No. 28-4 at 2). Soon thereafter, the plaintiff requested a transfer to the Post Office in Monroe, Connecticut, which occurred on March 18, 2017. (Doc. No. 28-2 at 1; Doc. No. 28-4 at 3; Doc. No. 28-10 at 6-7).

The plaintiff, as a member of the National Association of Letter Carriers, AFL-CIO, was subject to a collective bargaining agreement with USPS. (Doc. No. 28-2 at 1; Doc. No. 28-6 at 3). In accordance with the collective bargaining agreement, the structure of progressive disciplinary procedures applicable to other USPS employees did not apply to grievances involving employees such as the plaintiff who were employed in CCA roles. (Doc. No. 28-2 at 1; Doc. No. 28-6 at 14-15). The bargaining agreement states that "CCAs may be disciplined or removed within the term of their appointment for just cause." (Doc. No. 28-6 at 14). City Carriers, on the other hand, must

be disciplined in accordance with a progressive disciplinary procedure. (Doc. No. 28-2 at 2; Doc. No. 28-6 at 5-9).

There are additional distinctions between the CCA and City Carrier roles. CCA's are non-career employees with a set term of 360 days per year and are subject to annual rehiring procedures whereas City Carriers are not similarly restricted; City Careers are eligible for additional and different benefits than CCAs; and City Carriers have an established route, whereas CCA have routes and work hours that can be ad hoc and subject to change depending on need. (Doc. No. 28-2 at 2; Doc. No. 28-5 at 10-11; Doc. No. 28-6 at 3-4, 10-16; Doc. No. 28-7 at 11-17).

On May 3, 2017, the plaintiff was issued an official letter of warning for "Unsatisfactory Work Performance/Failure To Discharge [Her] Duties Conscientiously and Effectively" by Supervisor David Carrasquillo. (Doc. No. 28-2 at 3; Doc. No. 28-5 at 28). According to the letter, on April 27, 2017, the plaintiff delivered an Amazon Fresh grocery order, which must be delivered during a specific time window, twenty-five minutes early. (*Id.*). As such, the letter indicated that the plaintiff's "actions demonstrate[d] that [she had] failed to perform [her] duties in a conscientious and effective manner." (*Id.*). The letter also stated that the plaintiff was given a pre-disciplinary interview on May 3, 2017, during which she provided "no acceptable explanation" for delivering outside of the required window. (Doc. No. 28-2 at 3; Doc. No. 28-5 at 27-28). The letter also provided the plaintiff with an opportunity to file a grievance within fourteen days of receiving the notice. (Doc. No. 28-2 at 3; Doc. No. 28-5 at 28). The plaintiff signed the letter on May 3, 2017. (*Id.*).

Carrasquillo imposed additional discipline on the plaintiff on June 19, 2017, by issuing a seven-day suspension after she again delivered an Amazon Fresh grocery order outside of the set time window. (Doc. No. 28-2 at 4; Doc. No. 28-5 at 24-26). The Monroe Postmaster at the time,

Oscar Munoz, concurred with the suspension. (Doc. No. 28-2 at 4; Doc. No. 28-5 at 24). The letter suspending the plaintiff indicated that future failures to follow supervisors' instructions could result in "corrective action being taken against [the plaintiff], up to and including [] removal from the postal service." (Doc. No. 28-2 at 4; Doc. No. 28-5 at 25).

On July 9, 2017, the plaintiff, according to a Decision to Discipline and Concurrence Request signed by Carrasquillo on July 13, 2017, returned late to the Post Office without calling to notify the supervisor. (Doc. No. 28-2 at 4; Doc. No. 28-5 at 23). The document recommended imposition of a fourteen-day suspension, and Munoz agreed to the suspension. (*Id.*).[1] On July 28, 2017, Carrasquillo signed another Decision to Discipline and Concurrence request recommending that, instead of the fourteen-day suspension, the plaintiff be removed for an additional failure in the delivery of an Amazon Fresh order. (Doc. No. 28-2 at 4; Doc. No. 28-5 at 22). Munoz agreed with the decision, but ultimately, the letter of separation, dated August 9, 2017, was never signed, or issued. (Doc. No. 28-2 at 5; Doc. No. 28-5 at 21-22).[2] The plaintiff was neither suspended nor terminated at that time. (Doc. No. 28-2 at 4-5).

On August 31, 2017, the plaintiff was involved in an accident with her Postal vehicle in which she struck the support frame of a mailbox with the vehicle's side mirror. (Doc. No. 28-2 at 5; Doc. No. 28-5 at 19). During a September 6, 2017, pre-disciplinary interview regarding the incident, the plaintiff admitted to striking the mailbox. (*Id.*). The plaintiff was issued a letter of separation on September 18, 2017, which charged the plaintiff with the "Failure to Perform [Her] Duties in a Safe Manner." (*Id.*). The letter also referenced two of the plaintiff's prior disciplinary

---

[1] The plaintiff admits that the Decision to Discipline and Concurrence Request form was drafted, however, notes that no discipline related to this form is listed in the letter of separation. (Doc. No. 31 at 18).

[2] The plaintiff again admits that such a document was drafted but notes that the related July 2017 failure in delivering the Amazon Fresh order was not listed in the eventual September 18, 2017, letter of separation as part of the justification for the decision to terminate the plaintiff. (*Id.*).

actions and stated that "[t]he following elements of [her] past record [had] been considered in arriving at this decision." (Doc. No. 28-2 at 5; Doc. No. 28-5 at 19). The two cited incidents were the May 3, 2017, charge for "Unsatisfactory Work Performance and Failure to Discharge [] Duties Conscientiously and Effectively" in delivering an Amazon Fresh order out of time, and the June 19, 2017, charge for "Failure to Follow Instruction" for the second failed Amazon Fresh delivery (Doc. No. 28-5 at 19). The letter does not make any mention of the July 9, 2017, or the July 28, 2017, Decision to Discipline and Concurrence Requests. (Doc. No. 28-5 at 19).

The plaintiff's union filed a grievance on her behalf following her receipt of the September 18, 2017, letter of separation, giving rise to an October 31, 2017, agreement between the USPS and the union stipulating that the plaintiff would be rehired by USPS as a Mail Handler Assistant. (Doc. No. 28-2 at 6; Doc. No 28-5 at 30). The plaintiff resumed her employment at the Southern Connecticut Processing and Distribution Center on November 11, 2017. (Doc. No. 28-2 at 6; Doc. No 28-4 at 4).

Additional facts, including information about employees asserted by the plaintiff to be similarly situated comparators, will be discussed throughout the remainder of this ruling, where relevant.

## II.    PROCEDURAL HISTORY

On February 2, 2018, the plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint with USPS claiming that she was subjected to discrimination based on her sex and her age when she was issued the September 18, 2017, letter of separation. (Doc. No. 28-2 at 6; Doc. No. 28-5 at 2-9). The complaint also references a comment by an unnamed person telling the plaintiff that she was "too nice, a social butterfly." (Doc. No. 28-2 at 6; Doc. No. 28-5 at 2). On January 2, 2020, the EEO issued a decision, without holding a hearing, finding a lack of evidence

of discrimination based on age or sex and dismissing the plaintiff's complaint. (Doc. No. 28-9 at 6). The plaintiff was issued a Notice of Right to File a Civil Action on August 3, 2021. (Doc. No. 1 at 2).

On October 27, 2021, which was within 90 days of the receipt of the right-to-sue letter, the plaintiff timely commenced this action against Postmaster General of the United States Postal Service Louis DeJoy, Former Postmaster of the Monroe Post Office Oscar Munoz, and Supervisor David Carrasquillo, alleging discrimination based on age and sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623 *et seq.* ("ADEA"); and 29 C.F.R. § 1604.1 *et seq*. (Doc. No. 1). The plaintiff also asserts a claim for intentional infliction of emotional distress based on the defendants' willful misconduct in "violating Title VII and the EEOC" in terminating her. (*Id.* at 6). The defendants now move for summary judgment as to all claims. (Doc. No. 28).

## III.   LEGAL STANDARD

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). "A genuine dispute exists where the evidence is such that a reasonable jury could decide in the nonmovant's favor." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74 (2d Cir. 2014) (internal quotation marks and citation omitted). The materiality of a fact in dispute hinges on whether the fact might affect the outcome of the suit under the substantive law applicable to the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences

that could be drawn in favor of the party against whom summary judgment is sought." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

Initially, "the burden is upon the moving party to demonstrate that no genuine issue respecting any material facts exists." *Gallo v. Prudential Residential Services, Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). Should the moving party meet this burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson*, 477 U.S. at 249). However, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. and on which that party will bear the burden of proof at trial." *Celotex Corp. v Catrett*, 477 U.S. 317, 322 (1986). Stated differently, "the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim." *Watkins v. City of Waterbury Bd. of Educ.*, No. 19CV593(SVN), 2022 WL 3347218, at *8 (D. Conn. Aug. 12, 2022) (citing *Celotex Corp.*, 477 U.S. at 322-23). In shifting the burden back onto the non-moving party, in order to defeat summary judgment, it is incumbent upon the non-moving party to present "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## IV.   DISUSSION

### A.   Individual Liability

The defendants assert, as a threshold issue, that defendants Munoz and Carrasquillo are entitled to summary judgment on the plaintiff's sex and age discrimination claims because, as individual supervisors, they are not proper defendants under either Title VII or the ADEA. (Doc.

No. 28-1 at 9-10). The plaintiff does not address this argument in her opposition to the defendants' motion for summary judgment.

The defendants are correct that "under Title VII[,] individual supervisors are not subject to liability." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *see Balogun v. N.Y. State Div. of Hum. Rts.*, 2023 WL 8446743, *1 n 1 (2d Cir. Dec. 6, 2023)("individual supervisors and coworkers . . . aren't subject to liability under Title VII"); *Littlejohn v. City of N.Y.*, 795 F.3d 297, 313 (2d Cir. 2015) ("Title VII does not create liability in individual supervisors and co-workers who are not the plaintiff['s] actual employer[]"); *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 195 n 2 ("Title VII, while imposing liability on employers, does not impose liability on the supervisory personnel of employers"). Similarly, the ADEA also does not allow for individual liability. *See Cherry v. Toussaint*, 50 Fed. App'x. 476, 477 (2d Cir. 2002) ("the ADEA precludes individual liability"); *Anderson v. Derby Bd. of Educ.*, 718 F.Supp.2d 258, 266 (D. Conn. 2010) ("there is no individual liability under the ADEA"); *Gibbs v. City of New Haven*, 544 F.Supp.2d 119, 125 (D. Conn. 2008) ("[t]he ADEA precludes holding individuals liable even where they create the alleged discrimination").

Based on the foregoing, summary judgment is **GRANTED** as to defendants Munoz and Carrasquillo on the plaintiff's sex and age discrimination claims. These claims remain actionable, however, as brought against defendant DeJoy on behalf of the USPS.

### B.    Sex Discrimination

The plaintiff alleges that the defendants discriminated against her on the basis of sex when she was issued a letter of separation for her motor vehicle accident while three similarly situated

male employees were issued less severe or no discipline for motor vehicle accidents involving their Postal vehicles. (Doc. No. 1 at 5-6).[3]

Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2 (a)(1). Claims of discrimination in violation of Title VII are analyzed under what is referred to as the *McDonnell Douglas* burden-shifting framework. *See Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 177 (2d Cir. 2023); *Walsh*, 828 F.3d at 74. "Under the *McDonnell Douglas* test, '[f]irst, the plaintiff must establish a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Bjorklund v. Golub Corp.*, 832 Fed. App'x. 97, 98 (2d Cir. 2021) (quoting *Weinstock v. Columbia Univ.*, 22 F.3d 33, 42 (2d Cir. 2000)).

With respect to the fourth *prima facie* element, the plaintiff's claim "may be proven by showing that a man similarly situated was treated differently." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997); *see Cianciosi v. Home Depot U.S.A., Inc.*, 199 F.3d 1321, *2 (2d Cir. 1999) (unpublished table decision) ("[the] plaintiff must offer[] evidence that she was treated less favorably than comparable male employees in circumstances from which a gender-based motive could be inferred") (internal quotation marks and citations omitted). The Second Circuit has clarified that the plaintiff's burden here "is not onerous, and has been frequently described as minimal." *Walsh*, 828 F.3d at 75 (internal quotation marks and citation omitted). If the plaintiff has met her burden, "the burden shifts to the employer . . . 'to articulate some

---

[3] Count Two of the complaint claims that the defendants violated 19 C.F.R. § 1604.1 *et seq.* in discriminating against the plaintiff. (Doc. No. 1 at 5-6). The plaintiff's jurisdicional statement includes reference to Title VII of the Civil Rights Act and 29 C.F.R. § 1604.1 as providing the bases for the Court's jurisdiction over the plaintiff's complaint. (*Id.* at 1). The Court interprets the plaintiff's latter reference to 19 C.F.R. § 1604.1, as opposed to 29 C.F.R. § 1604.1, as a clerical error. The Court further construes the plaintiff's complaint to be asserting a claim of sex discrimination under Title VII, which provides the statutory basis for the plaintiff's claims.

legitimate, nondiscriminatory reason for the adverse employment action.'" *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (quoting *Walsh*, 828 F.3d at 75). "If the employer carries that burden, 'the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Walsh*, 828 F.3d at 75 (quoting *U.S. v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011)). Stated differently, "[t]he burden then shifts back to the plaintiff to present evidence that the employer's proffered reason is a pretext for an impermissible motivation." *Varno v. Canfield*, 664 Fed. App'x 63, 65 (2d Cir. 2016) (citation omitted). "The plaintiff bears, 'the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Carr*, 27 F.4th at 172 (quoting *Tex. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)).

### 1.    Prima Facie Case

With regard to the plaintiff's *prima facie* case, there is no dispute that the plaintiff is in a protected class, she was qualified for her position, and that she suffered an adverse employment action. (Doc. No. 28-1 at 10-14; Doc. No. 31 at 9). The plaintiff satisfies these elements as she is a woman, she met the qualifications for her role as a CCA, and she suffered an adverse employment action when she was terminated from her position following the accident with her Postal vehicle. The only issue that remains is whether there exists a question of material fact as to the fourth prong, *i.e.*, whether there are circumstances giving rise to an inference of discrimination based on sex. The plaintiff seeks to demonstrate discriminatory intent not through direct evidence of discriminatory animus, but by showing that three male employees, two of whom were younger than her, were not similarly punished for accidents involving their Postal vehicles. (Doc No. 1 at 4-6; Doc. No. 31 at 4, 6-9). The defendants, however, argue that the plaintiff cannot satisfy the

fourth prong because the three male coworkers she identifies as comparators do not satisfy the legal standard of being similarly situated to the plaintiff. (Doc. No. 28-1 at 10-14).

"Under Title VII, discriminatory intent can be shown by either direct evidence of discriminatory animus or circumstantial evidence of such animus, including by showing disparate treatment among similarly situated employees." *Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022) (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). "[W]here a plaintiff seeks to make out her *prima facie* case by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated."[4] *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (citing *Shumway*, 118 F.3d at 64). A plaintiff need not show that they are similar to the comparator in all respects, but "the individuals with whom [the] plaintiff attempts to compare herself must be similarly situated in all material respects." *Doe v. City of N.Y.*, 473 Fed. App'x. 24, 27 (2d Cir. 2012) (internal quotation marks and citation omitted). "In the context of employee discipline, [] the plaintiff and the similarly situated employee[s] must have engaged in comparable conduct, that is, conduct of comparable seriousness." *Dooley v. JetBlue Airways Corp.*, 636 Fed. App'x. 16, 20 (2d Cir. 2015) (internal quotation marks and citation omitted).

The plaintiff identifies three comparators in her complaint. (Doc. No. 1 at 4). All three comparators are male and were also involved in vehicle accidents with their Postal vehicles around the same time as the plaintiff. (*Id.*). The first, D.T., born in 1996, was also a CCA. (Doc. No. 28-2

---

[4] The plaintiff's claims can only be supported by the use of similarly situated comparators because there is no direct or other circumstantial evidence of discrimination. To start, the plaintiff testified outright in her deposition that Carrasquillo did not discriminate against her. (Doc. No. 28-10 at 13). Similarly, the plaintiff testified that Munoz never spoke disparagingly to the plaintiff or talked negatively about her being a woman or about women in general. (Doc. No. 28-10 at 22). The plaintiff also stated that Munoz never made any negative comments to her about her age. (Doc. No. 28-10 at 22). The plaintiff only referred to Munoz generally as being "nasty," but did not describe his behavior as discriminatory based on sex or age. (Doc. No. 28-10 at 24).

at 6; Doc. No. 28-5 at 12). He had been employed at the Monroe Post Office for ten months at the time of his accident. (Doc. No. 28-2 at 7; Doc. No. 28-5 at 12). On January 7, 2017, D.T. was involved in an accident with his Postal vehicle in which he was driving down a hill in the snow, slid, and hit an oncoming vehicle. (Doc. No. 28-2 at 6; Doc. No. 28-5 at 5; Doc. No. 28-8 at 7). He was issued a letter of warning. (Doc. No. 28-2 at 7; Doc. No. 28-5 at 5, 13). D.T. had no prior discipline before this accident. (Doc. No. 28-2 at 7; Doc. No. 28-5 at 5).

The second comparator, R.K., born in 1972, had been a City Carrier with USPS for nineteen years at the time of his accident. (Doc. No. 28-2 at 7; Doc. No. 28-5 at 14). On September 14, 2017, R.K. was turning into a driveway when he struck a tree. (Doc. No. 28-5 at 5, 15). R.K. had no prior history of discipline and did not receive any discipline for this accident. (Doc. No. 28-2 at 7; Doc. No. 28-5 at 5, 15).

The third comparator, S.R., born in 1960, was also employed as a City Carrier and had been employed by USPS for almost thirty years at the time of his accident. (Doc. No. 28-2 at 8; Doc. No. 28-5 at 16). On July 5, 2016, S.R. missed a mail drop off and began backing up his vehicle when he failed to notice a car backing out of a driveway. (Doc. No. 28-5 at 5, 17). S.R. had no prior discipline and received a letter of warning following the accident. (Doc. No. 28-2 at 8; Doc. No. 28-5 at 5, 17).

There is no evidence upon which a jury could find that these comparators were similarly situated to the plaintiff. To start, R.K. and S.R., as City Carriers, were in entirely different roles from the plaintiff, with different employment structures and benefits, and were subject to progressive discipline. Terminating either employee following their accidents would have violated the collective bargaining agreement. R.K. and S.R. had also been employed by USPS for

significantly longer periods of time than the plaintiff, nineteen and thirty years respectively, without any prior disciplinary history.

D.T., as the only proposed comparator who was also a CCA, and having been employed for a similar period of time as the plaintiff (ten months), is the most similar to the plaintiff. However, these similarities fail to establish D.T. as a similarly situated comparator and are not enough to raise a question of fact as to whether any disparate treatment of the plaintiff was the result of discrimination. Like R.K. and S.R., D.T. had no prior discipline at the time of his accident. This is in direct contrast to the plaintiff who had been disciplined on three separate occasions before her accident, receiving a letter of warning, a seven-day suspension, and recommendations first for a fourteen-day suspension and soon after for termination. This discipline came as a result of her conduct before she got into the accident with her Postal vehicle. Four instances of misconduct giving rise to recommendations for discipline is significant, especially given the plaintiff's short tenure as a CCA, and materially differentiates her from D.T. On this point, "prior disciplinary problems may be sufficient to justify differential treatment of otherwise similarly situated employees" *Padilla v. Harris*, 285 F.Supp.2d 263, 270 (D. Conn. 2003). Moreover, D.T. did, in fact, receive a letter of warning following his accident — the same discipline that the plaintiff received for her first infraction.

The plaintiff asserts in opposition to the defendants' motion that there is an issue of material fact as to her disciplinary record; she believes that the incidences of discipline giving rise to the letter of warning and the seven-day suspension were grieved by the union and therefore, though she claims to have never received her employee file to verify, the discipline could have been removed from her record. (Doc. No. 31 at 7). Of note, "[w]hen a motion for summary judgment is supported by documentary evidence . . . and 'demonstrates the absence of a genuine issue of

material fact,' the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or 'rely on conclusory allegations or unsubstantiated speculation.'" *Vasquez v. Garcia*, 432 F.Supp.3d 92, 96 (D. Conn. 2019) (quoting *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015). Here, the defendants have provided documentation of the plaintiff's discipline in the form of letters from the plaintiff's employment file and forms filled out by defendants Munoz and Carrasquillo assigning discipline to the plaintiff. Further, the plaintiff admits to such discipline in her response to the defendants' statement of material facts. The allegations here that grievance procedures may have been pursued and the discipline may have been removed from the plaintiff's file are too speculative to raise a question of material fact in the face of the defendants' documentary evidence.

As the plaintiff is unable to identify similarly situated comparators, the Court finds that the plaintiff has failed to establish a *prima facie* case of discrimination on the basis of sex and grants summary judgment to the defendants. *See Hayes v. Kerik*, 414 F.Supp.2d 193, 205 (E.D.N.Y 2006) (finding that other black female employees in a different role from the plaintiff were not similarly situated comparators); *Padilla*, 285 F.Supp.2d at 263 (holding that a proposed comparator with a lesser disciplinary history was not similarly situated to the plaintiff).

### 2.    Pretext

Even assuming *arguendo* that the plaintiff has established a *prima facie* case of discrimination, the defendants have offered a legitimate, nondiscriminatory reason for terminating her. It is undisputed that the plaintiff was in an at-fault accident with her Postal vehicle. This accident alone, forms a legitimate, nondiscriminatory reason for the plaintiff's termination. *See Llanos v. City of N.Y.*, No. 11CV3953(DLC), 2012 WL 5457916, at *12 (S.D.N.Y. Nov. 7, 2012) (holding that the plaintiff's actions in causing damage to her Parks Department vehicle was a

legitimate reason for her termination); *Belardo v. Con-Way Transp. Serv., Inc.*, No. 02CV5406(SLT)(SMG), 2005 WL 885016, *5 (E.D.N.Y. Mar. 28, 2005) (finding the plaintiff's involvement in an at-fault accident to be a legitimate, non-discriminatory reason for termination).

Moreover, there is evidence that the plaintiff had been subject to discipline on multiple occasions prior to the accident. In fact, in the six short months that the plaintiff was a CCA at the Monroe Post Office, she had, on three separate occasions, delivered a grocery order outside of the time window and, on one occasion, returned late without calling her supervisor. For these infractions, the plaintiff was first given a letter of warning, then suspended for seven days and eventually received sign-off to be subject both to an additional fourteen-day suspension and a termination. This is not an insignificant disciplinary history considering the short duration of the plaintiff's employment as a CCA at the time of her accident.

In response, the plaintiff fails to provide any evidence that would allow a reasonable jury to find that using her accident as a basis for termination was a pretext for discrimination. Based on the foregoing, the plaintiff's Title VII claim fails as a matter of law, and the defendants' motion for summary judgment as to the sex discrimination claim must be **GRANTED**. *See DeMuth v. U.S. Small Bus. Admin.*, 819 Fed. App'x. 23, 26 (2d Cir 2020) (dismissing the plaintiff's Title VII claim where the plaintiff "failed to present any evidence" to show that the stated reason for the plaintiff's termination was pretextual); *Louis v. Brooklyn Botanic Gardens*, 487 Fed. App'x. 603, 604 (2d Cir. 2012) (dismissing the plaintiff's Title VII claim where they "did not present sufficient evidence from which a reasonable jury could find that this reason was pretextual").

### C.    Age Discrimination

The plaintiff also alleges that the defendants discriminated against her on the basis of her age when they terminated her following the motor vehicle accident with her Postal vehicle, since

two younger employees were not similarly disciplined for accidents involving their Postal vehicles. (Doc. No. 1 at 5).

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "The Second Circuit has indicated that ADEA claims are analyzed under the same framework as claims brought pursuant to Title VII, *i.e.*, a burden shifting standard under which a plaintiff must first establish a prime facie case of age discrimination, after which the employer is required to offer a legitimate, nondiscriminatory business rationale for its actions, and if the employer articulates such a reason, the plaintiff then has the burden of proving that his age was the real reason for [her] discharge." *Chapman v. Sikorsky Aircraft Corp.*, No. 13CV518(VAB), 2015 WL 7783523, *4 (D. Conn. Dec. 3, 2015) (citing *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000)). Importantly, "[a] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor." *Rubinow v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 496 Fed. App'x 117, 118 (2d Cir. 2012)(internal quotation marks and citation omitted).

The defendants assert that the plaintiff cannot establish a *prima facie* case for discrimination based on age based on a lack of evidence giving rise to an inference of discriminatory intent. (Doc. No. 28-1 at 10-14). The defendants again take issue with the comparators put forth by the plaintiff, arguing that they are not similarly situated to the plaintiff. (*Id.*).

As with the sex discrimination claim brought under Title VII, the plaintiff may meet their burden of raising an inference of discriminatory intent by showing that younger, similarly situated

16

employees were treated more favorable than she was. *See Berube v. Great Atlantic & Pacific Tea Co., Inc.*, 348 Fed. App'x. 684, 686 (2d Cir. 2009). Here, the plaintiff puts forth the same comparator employees as she did for her sex discrimination claim. Of note, only D.T. and R.K. are younger than the plaintiff. These comparators fail once again as R.K. had been employed by USPS for significantly longer than the plaintiff, held a different role, and, most importantly, was subject to a different discipline structure under the collective bargaining agreement. Both D.T. and R.K., unlike the plaintiff, had no prior discipline. As the plaintiff is unable to identify legal sufficient comparators, the Court finds that the plaintiff has failed to establish a *prima facie* case of discrimination on the basis of age and grants summary judgment to the defendants. *See Ramsaroop v. Dept. of Educ. of City of N.Y.*, No. 20CV4947(ER), 2023 WL 22621, * 10 (S.D.N.Y. Jan. 2, 2023); *Glenwright v. Xerox Corp.*, 832 F.Supp.2d 268, 276-277 (W.D.N.Y. 2011).

Even assuming *arguendo* that the plaintiff has made out a *prima facie* case of age discrimination, she is unable to show that her age was the but-for cause of her termination. Here, the plaintiff fails to introduce into the record evidence supporting the idea that her age was even a factor in the decision to terminate her – let alone the but-for cause. The record instead reflects that the plaintiff had been accruing significant discipline during her ten-month tenure as a CCA before being in an at-fault accident in her Postal vehicle. It is this accident, coupled with the plaintiff's history of discipline, which gave rise to her termination. As stated above, the comparators put forth by the plaintiff as her only evidence of discrimination, fail to raise a question of material fact regarding discriminatory intent. The plaintiff introduces no further evidence of age discrimination. As such, the plaintiff's ADEA claim fails as a matter of law, and the defendants' motion for summary judgment must be **GRANTED**. *See Mikinberg v. Bermis Co., Inc.*, 555 Fed. App'x 34, 36 (2d Cir. 2014) (finding that the plaintiff failed to show that age was the but-for cause of their

termination where two alleged comparators were found to be not similarly situated and the plaintiff put into evidence "sparse age-related comments"); *Phillips v. Centrix Inc.*, 354 Fed. App'x. 527, (2d Cir. 2009) (finding that there was insufficient evidence that age was the but-for cause of the plaintiff's termination where the plaintiffs put forth statistical evidence, evidence of statements which allegedly evinced discriminatory intent, and information about a similarly situated younger employee who had not been terminated).

### D.    Intentional Infliction of Emotional Distress

In Count Three of the complaint, the plaintiff further alleges that the defendants' willful misconduct caused her to suffer emotional distress, and that the defendants knew, or should have known, that such emotional distress would result from their misconduct (Doc. No. 1 at 6). The complaint, however, is unclear as to whether this claim is brought pursuant to Title VII or as a standalone tort. The plaintiff fails to provide the Court with any additional clarity in responding to the defendants' motion for summary judgment. (Doc. No. 31 at 9).[5] Regardless, whether brought as a standalone tort or as a claim pursuant to Title VII, the claim is procedurally deficient, and the defendants are entitled to summary judgment.

If the plaintiff has brought this claim as a standalone tort, the Federal Tort Claims Act ("FTCA") governs. *See* 39 U.S.C. § 409 (c). However, "the FTCA precludes plaintiff's claims against the individual defendants because the conduct for which plaintiff seeks relief occurred within the scope of the defendants' employment at the USPS." *Herbst v. U.S. Postal Serv.*, 953 F.Supp.2d 463, 469 (E.D.N.Y 2013) (citing *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir.

---

[5] The plaintiff's memorandum in opposition to the defendants' motion for summary judgment on this claim only addresses the defendants' arguments as to exhaustion of administrative remedies, noting that, in the defendants' answer, they "admit that Plaintiff has exhausted her administrative remedies." (Doc. No. 31 at 9). The plaintiff, however, bears the burden of demonstrating that the Court has subject matter jurisdiction over her claims. *See Cangemi v. United States*, 13 F.4th 115, 130 (2d Cir. 2021); *Makrova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff fails to show that this claim is proper as to these defendants or that she did, in fact, exhaust her administrative remedies as to this claim.

1991)). It is impossible to argue, and the plaintiff makes no attempt to argue, that the defendants were not acting in the scope of their employment when disciplining the plaintiff for incidents that occurred within the scope of her own employment with USPS. As such, this claim fails when construed as a standalone tort.

Construing the plaintiff's complaint as asserting a claim under Title VII for hostile work environment does not change the outcome. First, the plaintiff does not use the phrase hostile work environment and cites the defendants' singular action in terminating her as giving rise to the claim for emotional distress. (Doc. No. 1 at 6). As a result, only the broadest and most generous reading of the complaint could allow for the possibility that it is asserting a hostile work environment claim under Title VII. Nevertheless, any hostile work environment claim would fail at this stage of the litigation as the plaintiff did not raise this claim in her complaint brought before the EEOC. (Doc. No. 28-5 at 2-9; Doc. No. 28-9 at 2-7).

Though a Court will "consider all claims to the extent they are 'reasonably related' to those that the plaintiff did assert in a timely EEO charge," *Mathirampuzha v. Potter*, 548 F.3d 70, 75 (2d Cir. 2008) (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001), the Supreme Court has held that "[h]ostile environment claims are different in kind from discrete acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (citations omitted). As the Court explained, "[t]heir very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts." *Id.* The EEO complaint in this case only cites to the defendants' actions in terminating her and does not plead a claim for hostile work environment. As such, the plaintiff has failed to exhaust her administrative remedies, and any

hostile work environment claim is not properly before this Court. *See Hoffman v. Williamsville Sch. Dist.*, 443 Fed. App'x. 647, 649 (2d Cir. 2011); *Gaie v. Bridgeport Police Dept.*, No. 20CV1736(KAD), 2023 WL 7337200, *6 (D. Conn. Nov. 7, 2023); *Foster-Bey v. Potter*, 296 F. Supp.2d 195, 202-203 (D. Conn. 2003).

Even assuming *arguendo* that the plaintiff had exhausted her administrative remedies, the record raises no question of material fact as to whether the defendants' conduct amounted to a hostile work environment. The defendants assert that such a claim fails as the plaintiff has not shown that she was subject to daily abuse amounting to a hostile work environment, or that any one incident was sufficiently extraordinarily severe. (Doc. No. 28-1 at 19-21). The plaintiff does not address the defendants' arguments regarding the merits of a hostile work environment claim in responding to the motion for summary judgment, and instead addresses only the arguments as to exhaustion. (Doc. No. 31 at 9).

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks and citations omitted). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2022) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). In order for a singular incident to constitute a hostile work environment, the "incident must be extraordinarily severe[,] . . . but it need not involve an actual or threatened physical assault." *Banks v. General Motors, LLC*, 81 F.4th 242, 263 (2d Cir. 2023) (internal quotation marks and citations

omitted). Importantly, "in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Alfano*, 294 F.3d at 376 (citing *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

Here, the plaintiff testified at her deposition that she was not discriminated against by defendant Carrasquillo and that defendant Munoz never spoke negatively to her about her being a woman, or about women in general. (Doc. No. 28-10 at 13, 22). The plaintiff did testify as to a few interactions with defendant Munoz during which "he came after [her] several times." (Doc. No. 28-10 at 13). The first incident described by the plaintiff involved Munoz calling her over to ask her some questions and getting upset with her for not clocking out first, despite the plaintiff allegedly making him aware that she was still on the clock before coming over to him. (*Id.* at 14). The plaintiff also testified that Munoz would watch how she "cased" her route and that she felt like she had an "invisible marker" on her. (*Id.* at 15). In one instance, Munoz was critical of her for not "casing" her route quickly enough. (*Id.* at 19-20). In addition, there was an incident in which Munoz instructed the plaintiff to get a lock for her mailbag even though other employees did not need to lock their bags. (*Id.* at 18).

These interactions are insufficient as a matter of law to meet the threshold for severity or pervasiveness required to make out a hostile work environment claim. These interactions cannot be described as being permeated with discriminatory intimidation, ridicule, and insult so as to meet the applicable standard. Further, the evidence does not support that any of this conduct occurred because of the plaintiff's sex. Neither does the plaintiff point to an individual episode of conduct in her testimony that would be so severe as to constitute a hostile work environment. As such, the plaintiff's hostile work environment claim also fails on the merits. *See Alfano*, 294 F.3d at 378-80 (holding that five separate incidents occurring over a five-year period did not constitute a hostile

environment); *Agosto v. N.Y.C. Dept. of Educ.*, 982 F.3d 86, 102-104 (2d Cir. 2020) (holding that incidents involving staring, sneering, cat-calling, and singing "in a feminine voice" did not constitute a hostile work environment); *Domingo v. Avis Budget Grp., Inc.*, No. 18CV5430 (BMC), 2020 WL 804898, *3 (E.D.N.Y. Feb. 18, 2020) (holding that neither an incident in which the plaintiff was asked, "albeit crud[ely]," on a date by a co-employee nor an incident in which she was touched on the buttocks constituted conduct which was so extraordinarily severe as to support a hostile work environment claim); *Russo v. N.Y. Presbyterian Hosp.*, 972 F.Supp.2d 429, 444 (E.D.N.Y. 2013) (holding that comments that had been made by a supervisor, although "vulgar and inappropriate," did not constitute an ongoing hostile work environment and were "insufficient to establish a continuing violation").

## V.    CONCLUSION

For the reasons stated above, the defendant's Motion for Summary Judgment (Doc. No. 28) is **GRANTED**. Judgment is entered in the defendants' favor. As there are no remaining claims, the clerk is directed to close this case.

This is not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge on September 26, 2022, (Doc. No. 14), with any appeal to be made directly to the Court of Appeals. *See* Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at New Haven, Connecticut, this 19th day of January 2024.


   /s/ Robert M. Spector, USMJ
Robert M. Spector
United States Magistrate Judge